UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBBIE PATRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:22-CV-230-ACL |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Debbie Patrick brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Patrick's severe impairments, she was not disabled as she was capable of performing her past work and other work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I.  Procedural History

Patrick protectively filed her application for DIB on September 16, 2019, and filed her

application for SSI on November 25, 2019.  (Tr. 304-11.)  She claimed she became unable to work on October 1, 2017, due to anxiety, bipolar disorder, depression, and schizophrenia.  (Tr. 353.)  Patrick was 56 years of age at her alleged onset of disability date.  (Tr. 304.)  Her applications were denied initially.  (Tr. 139-43.)  Patrick's claims were denied by an ALJ on May 17, 2021.  (Tr. 13-26.)  On November 26, 2021, the Appeals Council denied Patrick's claim for review.  (Tr. 4-7.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Patrick argues that the "ALJ's RFC assessment is not supported by substantial evidence."  (Doc. 18 at 1.)  She specifically argues that the ALJ erred in "disregarding the DDS' limitation to unskilled work, which precludes Plaintiff's past relevant semi-skilled work;" and the ALJ "failed to consider the cyclic aspects related to Plaintiff's severe bipolar disorder where she has episodes of chronic fatigue with alternating periods of agitation."  *Id.*

## II.  The ALJ's Determination

The ALJ first found that Patrick met the insured status requirements of the Social Security Act through December 31, 2023.  (Tr. 15.)  She stated that Patrick has not engaged in substantial gainful activity since her alleged onset date.  *Id.*  In addition, the ALJ concluded that Patrick had the following severe impairments: bipolar disorder, major depressive disorder, and alcohol use disorder.  (Tr. 16.)  The ALJ found that Patrick did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id.*

As to Patrick's RFC, the ALJ stated:

Page **2** of **19**

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels.   She can tolerate occasional interaction with co-workers and supervisors, but can perform no tandem tasks or work in close proximity to co-workers (i.e. no shoulder to shoulder work environment).   She can perform work that is done relatively independently with minimal, superficial interaction with the general public and should avoid intense or extensive interpersonal and handling complaints or dissatisfied customers.

(Tr. 19.)

The ALJ found that Patrick was capable of performing her past work as a transformer assembler.  (Tr. 24.)   In the alternative, the ALJ found that Patrick could perform other jobs that exist in significant numbers in the national economy, such as janitorial worker, kitchen helper, or laundry worker.   (Tr. 24-25.)   The ALJ therefore concluded that Patrick was not under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of the decision.   (Tr. 26.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on September 13, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on November 25, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the

Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d);

*see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).  "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004);

20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§

404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Patrick argues that the ALJ erred in determining her RFC. She also challenges the ALJ's evaluation of medical opinion evidence.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ found that Patrick had the RFC to perform a full range of work at all exertional levels, but with the following limitations resulting from her mental impairments: can tolerate occasional interaction with co-workers and supervisors, but can perform no tandem tasks or work in close proximity to co-workers (i.e. no shoulder to shoulder work environment); can perform work that is done relatively independently with minimal, superficial interaction with the general public; and should avoid intense or extensive interpersonal and handling complaints or dissatisfied customers. (Tr. 19.) In making this determination, the ALJ evaluated the medical opinion evidence.

A "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).   Under the revised Social Security regulations,[1] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).   Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings[2] using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines.  *See* 20 C.F.R. § 404.1520c.   The ALJ must explain how they considered the factors of supportability and consistency in their decisions but are not statutorily required to discuss the other factors.  20 C.F.R. § 404.1520c(b)(2).

1. **Prior Administrative Medical Findings**

Patrick first argues that the ALJ's RFC determination is erroneous because it conflicted with a prior administrative finding that limited Patrick to unskilled work.  She contends that the

---

[1] The new regulations are applicable to Patrick's claims because she filed her appeal after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[2] "Prior administrative medical findings" are findings, other than the ultimate determination on whether a claimant is disabled, about medical issues made by the consultants at a prior level of review in the claimant's current claim based on their review of the evidence.  81 Fed. Reg. at 62,564; 20 C.F.R. § 404.1513(a)(5) (2017).

error had "dire consequences" for Patrick, as she concluded she could return to her past work, which is a semi-skilled job. (Doc. 18 at 5.)

On May 1, 2020, state agency psychological consultant Keith L. Allen, Ph.D., found Patrick had moderate limitations in her ability to interact with others and in her ability to adapt or manage herself. (Tr. 98.) He expressed the opinion that Patrick retained the ability to understand, recall, and carry out simple to moderately complex instructions and procedures requiring brief learning periods; concentrate and persist at familiar tasks requiring some independent judgment and involving minimal variations; interact as needed with supervisors and peers sufficiently for task completion with limited interpersonal demands in a limited social setting and involving no significant interaction with the public on more than an occasional basis; and adapt adequately to situational conditions and changes with reasonable support and structure. (Tr. 101.) Dr. Allen found Patrick was limited to unskilled work. (Tr. 102.)

On September 9, 2020, state agency psychologist Kim Stalker, Psy.D., found that Patrick had moderate limitations in her ability to interact with others, but only mild limitations in her ability to adapt or manage herself. (Tr. 112.) As to her mental RFC, Dr. Stalker expressed the opinion that Patrick would "function best in a setting where there is little need for direct supervision or frequent interactions with coworkers or members of the public." (Tr. 116.)

The ALJ found the prior administrative medical findings "persuasive," but noted that Dr. Allen's opinions were "less persuasive than those of Dr. Stalker because they were based upon a less complete review of the record." (Tr. 23.) The ALJ explained that Dr. Stalker had the benefit of reviewing updated statements regarding Patrick's activities of daily living when assessing her ability to adapt or manage herself. *Id.*

The undersigned finds that the ALJ properly assessed the prior administrative medical findings in determining Patrick's RFC. As will be discussed below, the ALJ's RFC determination is based on substantial evidence.

Patrick's argument that the ALJ erred in failing to incorporate Dr. Allen's adaptive limitations is based on the faulty assumption that such limitations would result in a finding of disability at step five. Although the ALJ did find Patrick was capable of returning to her past work as a transformer assembler—a semi-skilled job—she found in the alternative that Patrick was capable of performing other jobs existing in significant numbers in the national economy. (Tr. 24.) The ALJ relied upon the testimony of a vocational expert to find that Patrick could perform the positions of janitorial worker, kitchen helper, and laundry worker—all of which are unskilled positions. (Tr. 25.) As such, even if the ALJ had incorporated a limitation to unskilled work, Patrick would remain capable of performing the other work identified by the vocational expert.

Thus, any error at step four in the ALJ's failure to limit Patrick to unskilled work was harmless. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (applying harmless error analysis and noting the standard is "whether the ALJ would have reached the same decision denying benefits" even absent the error); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Hewitt v. Colvin*, 2015 WL 1286309, at *16 (E.D. Mo. Mar. 20, 2015) ("to the extent the ALJ committed any error at Step 4 of the sequential analysis, such error was harmless inasmuch as the ALJ made an alternative finding at Step 5 that [plaintiff] could perform other work in the national economy").

Accordingly, Patrick's first claim lacks merit.

2. **RFC Determination**

Patrick next argues that the ALJ "failed to consider the cyclic aspects related to Plaintiff's severe bipolar disorder where she has episodes of chronic fatigue with alternating periods of agitation."  (Doc. 18 at 6.)   She states that the ALJ restricted her interactions with others, but erred "in suggesting that [Patrick] has control over when she can 'tolerate occasional interaction' or avoid working 'in close proximity to co-workers.'"   *Id.*

Defendant responds that Patrick's argument reflects a misunderstanding of the RFC finding, which describes the employment circumstances under which Patrick is able to work despite her mental limitations.   Defendant argues that the RFC "does not require Plaintiff to decide when she is able to tolerate interactions with others in the workplace; instead, it limits such interactions to an occasional basis, to account for her mental limitations."   (Doc. 19 at 13.)   The undersigned agrees, and finds that the ALJ's RFC is supported by substantial evidence.

In determining Patrick's RFC, the ALJ first evaluated the consistency of Patrick's subjective allegations of limitations.   The ALJ summarized Patrick's testimony regarding her limitations, noting that she alleged that she became unable to work on October 1, 2017 "due to anxiety, depression, bipolar disorder, and schizophrenia."   (Tr. 20.)   Patrick reported a history of auditory hallucinations, but indicated she had not experienced hallucinations in the six months prior to the hearing.   *Id.*   She complained of intermittent depression.   *Id.*   Patrick reported that her impairments limit her abilities to lift, walk, bend, kneel, use her hands, and get along with others.   *Id.*

The ALJ determined that, although Patrick's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical

evidence and other evidence in the record. *Id.* The Court finds that the ALJ appropriately considered Patrick's subjective allegations.

The ALJ first summarized the medical evidence regarding Patrick's mental[3] impairments as follows:

On April 11, 2018, Patrick presented to Peter J. Lamble, M.D., with complaints of anger and depression. (Tr. 20, 440.) She reported experiencing mood swings, varying between fits of anger and severe depression. *Id.* On examination, her speech was fluent and not pressured, her mood was depressed, she exhibited a labile range of affect, mild psychomotor agitation was present, her insight was fair, her judgment was good, and no suicidal or homicidal ideation was present. (Tr. 20, 442.) Dr. Lamble diagnosed Patrick with bipolar depression, and recommended that she start on a low dosage of Zoloft.[4] (Tr. 442.)

On June 26, 2018, Patrick saw Jessica Bell, N.P., at Dr. Lamble's office, for evaluation and treatment of her depression/bipolar disorder. (Tr. 21, 437.) Patrick complained of depressed mood, difficulty concentrating, fatigue, insomnia, and psychomotor agitation. *Id.* She reported an onset of "several years ago, gradually worsening since that time." *Id.* Patrick indicated that she had not taken any medications for "several years." *Id.* On examination, Patrick was alert and oriented, her mood was "slightly depressed," and her affect was appropriate to mood. *Id.* Ms. Bell prescribed Zoloft. *Id.*

On July 23, 2018, Patrick called Ms. Bell's office requesting a letter to "get her a couple days off work to deal with" depression. (Tr. 21, 437.) Patrick reported that she did not have

---

[3]Patrick does not dispute the ALJ's finding that she did not have a severe physical impairment. As such, the discussion herein is limited to Patrick's mental impairments.
[4]Zoloft is indicated for the treatment of depression and anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited March 27, 2023).

suicidal ideation.  *Id.*  Ms. Bell advised Patrick that she could not give her a note without seeing her.  *Id.*

On July 24, 2018, Patrick presented to Ms. Bell with complaints of depressed mood, difficulty concentrating, fatigue, feelings of worthlessness/guilt, and hypersomnia.  (Tr. 21, 436.)  On examination, Patrick was alert and oriented, and her mood was depressed.  *Id.*  Ms. Bell prescribed Vraylar.[5]  *Id.*

Patrick presented to Thomas J. Spencer, Psy.D., on March 12, 2020, for a psychological evaluation.  (Tr. 21, 452-54.)  Patrick reported that she had seen "premonitions" or "ghosts" since her early teens.  (Tr. 452.)  She indicated that she had worked at her last job for eighteen years.  *Id.*  Patrick lost her job in 2018, when she was forced to move in with her mother after being evicted.  *Id.*  She explained that she was unable to drive to work after losing her license due to a DWI.  *Id.*  Patrick complained that she is depressed and anxious, is easily agitated and angered, is prone to verbal outbursts, and dislikes people.  *Id.*  She characterized her mood as "pretty good" much of the time, but the slightest stressor can leave her depressed or angry.  *Id.*  Patrick was recently prescribed Vraylar by her primary care provider but refuses to take it.  *Id.*  She had taken Zoloft prescribed by her primary care provider in the past, but had been off of it for about six years.  *Id.*  Patrick also reported a history of alcohol abuse, but claimed to have dramatically slowed her consumption beginning in 2017.  (Tr. 453.)  She indicated that she maintains her activities of daily living.  *Id.*  On examination, she had no impairment in grooming or hygiene, her eye contact was fair, her speech was within normal limits, she was cooperative and alert, her insight and judgment appeared "questionable," her affect was neutral,

---

[5]Vraylar is an antipsychotic drug indicated for the treatment of mood disorders such as bipolar disorder and bipolar depression.  S*ee* WebMD, http://www.webmd.com/drugs (last visited March 27, 2023).

she described her mood as "plain, just not happy but not really sad," she denied thoughts of suicide or homicide, she denied hallucinations, her flow of thought was intact, and her intelligence appeared to be average. *Id.* Dr. Spencer diagnosed Patrick with bipolar disorder and alcohol use disorder. *Id.*

Patrick underwent a consultative examination performed by Vanessa Halvorsen, D.O., on July 11, 2020. (Tr. 21, 457-60.) Patrick complained of depression, anxiety, bipolar disorder, and schizophrenia. (Tr. 457.) She reported that she drinks alcohol weekly, and her daily activities consist of watching television, cleaning, and using her computer. (Tr. 21, 457.) On examination, Patrick had a normal affect and picked up on social cues. (Tr. 21, 459.) Dr. Halvorsen noted that Patrick "does like to talk and talks out of turn, but nothing that would bring into light that she had any kind of psychiatric problems." *Id.* She diagnosed Patrick with a "history of psychiatric issues," and decreased visual acuity. (Tr. 21, 460.)

The ALJ found that Patrick's allegation of a disabling mental impairment was not consistent with or supported by the medical evidence of record. (Tr. 21.) The undersigned agrees. First, as Patrick acknowledges in her brief, "the evidence of record is sparse." (Doc. 18 at 7.) Although she alleged a disability onset date of October 1, 2017, she did not seek treatment for her mental impairments with her primary care provider until April 2018. She saw her primary care provider for follow-up on only two additional occasions during the relevant period. The ALJ properly considered Patrick's infrequent treatment in assessing her subjective allegations. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints.").

The ALJ also noted that the findings on examination have not been commensurate with the degree of limitation Patrick alleges. (Tr. 21.) She pointed out that the only abnormality

consistently noted on examination was a depressed mood. Despite Patrick's allegations of experiencing hallucinations or "premonitions," the record documents no such findings. An ALJ may consider the lack of objective medical evidence supporting a plaintiff's subjective complaints as one factor in assessing the consistency of the complaints. *Forte v. Barnhart,* 377 F.3d 892, 895 (8th Cir. 2004).

The ALJ next noted that Patrick stopped working for reasons other than her alleged disability. (Tr. 22.) Specifically, she testified that she left her job because she moved in with her mother after being evicted, and she did not have transportation to work from her mother's home. (Tr. 54-55.) Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. *Medihaug v. Astrue,* 578 F.3d 805, 816–17 (8th Cir. 2009); *Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir. 1992). The ALJ also pointed out that Patrick worked at her last job for eighteen years, and there was no indication in the record that her mental impairments worsened significantly since she stopped working. (Tr. 22.)

Additionally, the ALJ discussed Patrick's statements regarding her daily activities and found they were inconsistent with her subjective allegations. For example, Patrick testified that she provided care for her mother until her death in November 2019 (Tr. 55), is able to maintain her activities of daily living (Tr. 453), and her typical daily activity consists of watching television, cleaning, and using her computer (Tr. 457). (Tr. 17.) Though a person's ability to engage in chores or hobbies does not demonstrate an ability to work, *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000), it is proper for an ALJ to consider a claimant's activities for purposes of assessing the credibility of her claims of incapacity. *See Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed

housework, shopped, and handled money). The ALJ properly found Patrick's daily activities were inconsistent with a total inability to work.

The ALJ next considered the medical opinion evidence. As previously discussed, the ALJ found the opinion of state agency psychologist Dr. Stalker persuasive. (Tr. 23.) Dr. Stalker found that Patrick had moderate limitations in her ability to interact with others, and would "function best in a setting where there is little need for direct supervision or frequent interactions with coworkers or members of the public." (Tr. 116.) Dr. Stalker's opinion was based on a summary of the medical evidence and Patrick's reported daily activities. (Tr. 113.) Dr. Stalker remarked that the medical record does not reveal a diagnosis of schizophrenia as alleged by Patrick, and that she appears "relatively functional as she does chores, prepares meals, and shops in stores." *Id.* She also noted that Patrick reported living alone, spending her days going through her late mother's belongings, playing computer games, watching movies, and going fishing once or twice per year. *Id.*

Dr. Spencer expressed the opinion that Patrick had mild impairment in her ability to learn, recall, and use information and to consistently stay on task; and moderate impairment in her ability to relate to and work with others on a consistent basis. (Tr. 453.) The ALJ found the opinion of Dr. Spencer "generally persuasive," as it was based upon a contemporaneous mental status examination. (Tr. 23.) The ALJ noted that Dr. Spencer's opinion was supported by a detailed explanation citing her findings on examination and was consistent with the record as a whole, including the opinion of Dr. Stalker. *Id.* The ALJ remarked that Dr. Stalker's opinion was more persuasive due to the fact Dr. Stalker explained Patrick's limitations in specific vocationally relevant terms and cited Patrick's activities of daily living. *Id.*

The undersigned finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.   In her discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record.  *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).   She considered Patrick's complaints of difficulty getting along with others in imposing significant social limitations.   The ALJ's RFC is supported by the opinions of Drs. Stalker and Spencer, as well as the examination findings of Patrick's primary care provider.   It is also consistent with Patrick's ability to work with her mental impairments at the same position for eighteen years and engage in significant daily activities.   Patrick fails to demonstrate the presence of greater limitations than those found by the ALJ.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of March, 2023.